UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANMINA CORPORATION,<br><br>             Plaintiff,<br><br>-against-<br><br>DIALIGHT PLC,<br><br>             Defendant. | Case No. 1:19-cv-11710-KPF<br>  *related to*<br>  Case No. 1:19-cv-11712-KPF<br><br>**FIRST AMENDED COMPLAINT**<br><br><u>Jury Trial Demanded</u> |

Plaintiff Sanmina Corporation ("Sanmina") alleges as follows:

**<u>Jurisdiction and Venue</u>**

1.   Sanmina is a Delaware corporation with its principal place of business in San Jose, California.

2.   Sanmina is informed and believes, and thereon alleges, that Defendant Dialight plc ("Dialight") is a public limited company created and registered under the laws of England and Wales with its principal place of business in Suffolk, England.  Dialight is thus a citizen or subject of a foreign state within the meaning of 28 U.S.C. § 1332(a)(2).

3.   The amount in controversy exceeds $75,000, exclusive of interest and costs.

4.   Personal jurisdiction and venue lies in this Court because Section 25.10 of the parties' contract, known as the Manufacturing Services Agreement ("MSA"), contains a mandatory forum selection clause requiring any action arising out of the MSA to be brought in New York, New York.  The MSA also requires the application of New York law to this dispute.

5.   All requirements under the MSA prior to commencing litigation concerning a dispute thereunder have been satisfied.  Any conditions precedent to Sanmina's recovery under the MSA have been satisfied.

**Summary of the Case**

6.       On March 8, 2016, Sanmina and Dialight entered into the MSA under which Sanmina provided contract manufacturing services to Dialight for the production of LED lighting products and components.  On September 27, 2018, Sanmina received from Dialight a written notice of termination of the MSA without cause with a termination date of January 31, 2019.  Under the terms of the MSA, Dialight owes Sanmina approximately $5 million for unpaid invoices, and is liable to Sanmina for an additional $10 million in unconsumed parts and materials that Sanmina purchased in accordance with the MSA.  Sanmina holds a reserve account in the approximate sum of $5 million, which has been applied against Dialight's liability for unconsumed parts and materials.  By this action, Sanmina seeks to recover from Dialight the amounts due and unpaid under the MSA, plus interest at the contractual rate of 1% per month and reimbursement of all costs, including legal fees, associated with collecting the unpaid amounts.

**Statement of Facts**

7.       Sanmina is a contract manufacturer.  That means that customers retain Sanmina to build finished and semi-finished goods in accordance with plans and specifications the customer provides.

8.       Under the MSA, Dialight contracted with Sanmina to act as contract manufacturer to Dialight.  In order for Sanmina to fill Dialight's orders under the MSA, Sanmina needed to order parts and materials based on Dialight's forecasts of its expected future orders, and in accordance with the provisions of the MSA.  Consistent with the MSA, Sanmina did, in fact, purchase parts and materials to fill the orders Dialight forecast.  Pursuant to the terms of the MSA, and in particular Section 8 thereof, Dialight is required to purchase from Sanmina all such

14558.30:9788511.6

parts and materials that have become excess or obsolete (referred to as "E&O") as defined in the MSA.  Parts become excess, and eventually, obsolete after purchase by Sanmina when such parts are not consumed or expected to be consumed in Sanmina's production of finished goods within the timeframes specified in the MSA.

9. Pursuant to the MSA, Dialight's interim liabilities for excess materials were negotiated on a quarterly basis.  The negotiations began with Sanmina producing a spreadsheet listing all excess materials as determined by Section 8 of the MSA.  Dialight would generally respond with questions and objections, which generally produced an agreed compromise under which Dialight would agree to pay for certain parts and materials and the treatment of other parts and materials as excess would be deferred and revisited the following quarter.  Following the compromise, Dialight would issue a purchase order ("PO") for the agreed sum and Sanmina would issue a corresponding invoice that Dialight was required to pay.  Payments under the excess materials invoices were directed initially to a Sanmina Offset Inventory Reserve Account ("Reserve Account") created under the MSA.

10. During the last two quarterly reconciliations prior to termination, the process varied slightly because Dialight refused to agree on an interim excess materials liability figure and simply issued a PO in each quarter representing the amount it unilaterally decided it would pay.  Sanmina responded with a corresponding invoice, and both parties reserved their rights to challenge the amount stated in the Dialight PO.  All of the foregoing procedures were governed by Section 8 of the MSA.

11. On September 27, 2018, Dialight issued its written notice of termination of the MSA without cause (the "Notice of Termination").  Dialight issued the Notice of Termination under to Section 21.1 of the MSA, which permits Dialight to terminate the agreement at any time

14558.30:9788511.6

and without cause on 90 days' written notice.  The Notice of Termination specified January 31, 2019 as the effective termination date.

12. Dialight did not give notice under Section 21.2 of the MSA, which allows either party to terminate for material breach following a 30-day opportunity to cure.

13. Following Dialight's Notice of Termination, Sanmina attempted to follow the same excess materials process that the parties followed pre-termination, and as specified in the MSA.  On October 9, 2018, Sanmina issued its first post-termination excess materials spreadsheet to Dialight.  Thereafter, as the parties attempted to negotiate Dialight's liability, Sanmina provided weekly updates for a period of time that were based on Dialight's efforts to consume the parts and materials by placing orders for finished goods and Sanmina's efforts to cancel, return, or re-sell materials ordered under the Dialight forecasts.  After months of negotiations, on December 10, 2018, Dialight issued what it referred to as a "non-binding" PO in the amount of $9,005,035 (the "NBPO"), representing what Dialight claimed to be its total excess materials liability.  However, Sanmina could not accept or invoice the NBPO because, in addition to stating that it was not binding, the NBPO expressly stated it was intended simply to enable Dialight to later issue binding POs "at its discretion."  The NBPO also improperly stated that its terms superseded the terms of the MSA.

14. After issuing the NBPO, Dialight informed Sanmina that it would not make any payment to Sanmina on account of its excess materials liabilities, and in fact baselessly demanded a refund of the Reserve Account, refused to issue binding POs in accordance with the NBPO, and thereby repudiated in full Dialight's excess materials obligations under the MSA— precluding Sanmina from issuing any further excess materials-related invoices because there were no POs against which to issue them.

15. Furthermore, as a direct result of Dialight's termination of the MSA, all of the excess materials not consumed by pre-termination orders became obsolete under Sections 8.2 and 8.4 of the MSA, which define as obsolete all materials not forecasted to be consumed by Sanmina in the manufacture of Dialight products within the next 12 months. Upon materials becoming obsolete, all sums attributable to those materials formerly held in the Reserve Account are to be debited by Sanmina.

16. Notwithstanding Dialight's breach, in compliance with Section 8.5 of the MSA, Sanmina undertook commercially reasonable efforts to minimize Dialight's E&O liabilities. Sanmina requested cancellation of on-order items that were ordered in accordance with Dialight forecasts. Sanmina also called its brokers and requested them to sell on-hand materials on the open market. Further, Sanmina asked some of its suppliers to take back materials supplied, but these suppliers largely refused to buy back materials at a commercially reasonable price. Sanmina also applied Dialight materials to other Sanmina programs to the extent possible using Sanmina's in-house system that tracks materials worldwide within Sanmina.

17. Sanmina reasonably demonstrated to Dialight that Sanmina undertook (and Sanmina did in fact undertake) commercially reasonable efforts to minimize E&O, and that Sanmina purchased the materials using recognized economic order quantities, ABC buy and inventory management policy, and long lead-time materials management principles.

18. Sanmina holds $9,859,435.22 in obsolete materials ordered on the basis of Dialight forecasts and not consumed by Dialight orders. Given the $5,304,730.42 already received from Dialight in connection with its E&O obligations and initially deposited in, and then debited from, the Reserve Account, Dialight remains liable to Sanmina for payment of

$4,554,704.80 in respect of the E&O materials Sanmina purchased in accordance with the terms of the MSA.

19. Dialight also has refused to pay thousands of invoices for finished goods ordered by Dialight, delivered by Sanmina and accepted by Dialight; and for various materials, overhead, tooling, repair, and service charges for which Dialight is liable under the MSA. There is now an accounts receivable balance due and owing by Dialight to Sanmina, in addition to its E&O liabilities, in the sum of $5,325,711.80 ("A/R").

20. All A/R invoices are due within thirty days of issuance; all invoices for obsolete materials are due within twenty business days of issuance. All invoices bear interest at 1% per month from and after their due dates.

21. To the extent that Dialight refused to issue POs upon which Sanmina could invoice it (thus excusing any claimed obligation to issue an invoice), interest runs from the date of breach.

22. As of the date of the filing of this Amended Complaint, Dialight owes Sanmina the sum of $5,325,711.80 in unpaid A/R, plus interest commencing 30 days from the issuance of each invoice at the rate of 1% per month.

23. As of the date of filing this Amended Complaint, Dialight also owes Sanmina the sum of $4,554,704.80 in obsolete materials charges, which sum represents Dialight's net liability after debiting the funds in the Reserve Account. This obligation bears interest at the rate of 1% per month commencing on Dialight's repudiation and breach of its E&O obligations under the MSA or, at a minimum, 20 business days following Dialight's repudiation and breach.

24. The parties also fully complied with Section 25.9 of the MSA, which required pre-litigation efforts to resolve this dispute.

14558.30:9788511.6

25. Section 25.11 of the MSA provides that the prevailing party in this action is entitled to recover its costs and expenses, including without limitation its reasonable attorneys' fees.

26. On the basis of the foregoing facts, Sanmina alleges the following causes of action against Dialight.

## COUNT ONE

## FOR BREACH OF CONTRACT

### (CLAIM FOR A/R)

27. Sanmina incorporates herein, as if set forth in full, paragraphs 1 through 26, inclusive.

28. The MSA constitutes a valid and enforceable contract.

29. Sanmina has fully complied with all of its obligations under the MSA, except those obligations that have been excused or that Dialight has prevented Sanmina from fulfilling.

30. To the extent any provisions in the MSA may be considered conditions precedent to Dialight's payment obligations or Sanmina filing suit, Sanmina has satisfied all such conditions precedent or they have been waived or excused by Dialight's intervening breach and repudiation of its obligations.

31. Pursuant to, *inter alia,* Sections 3.6 and 11.1 of the MSA, Dialight has breached the MSA by failing to pay, as and when due, the sum of $5,325,711.80, representing invoices duly issued by Sanmina for finished and semi-finished goods ordered by, delivered to, and accepted by, Dialight, as well as for materials and various overhead, tooling, repair, and service charges for which Dialight is liable under the MSA.

32. Each of the invoices comprising the amount now past due bears interest at the rate of 1% per month commencing 30 days after issuance of said invoice.

33. As a result of Dialight's failure to pay, Sanmina has suffered damages in the sum of $5,325,711.80, plus interest thereon, which interest continues to accrue at the rate of 1% per month.

34. Sanmina also is entitled to recover its attorneys' fees and costs of suit in accordance with the terms of the MSA.

## COUNT TWO

## FOR BREACH OF CONTRACT

## (CLAIM FOR E&O LIABILITY)

35. Sanmina incorporates herein, as if set forth in full, paragraphs 1 through 26, inclusive.

36. The MSA constitutes a valid and enforceable contract.

37. Sanmina has fully complied with all of its obligations under the MSA, except those obligations that have been excused or that Dialight has prevented Sanmina from fulfilling.

38. To the extent any provisions in the MSA may be considered conditions precedent to Dialight's payment obligations or Sanmina filing suit, Sanmina has satisfied all such conditions precedent or they have been waived or excused by Dialight's intervening breach and repudiation of its obligations.

39. In addition to the breach alleged in Count One, Dialight has breached and repudiated its obligations under the MSA by refusing to pay the sum of $4,554,704.80, or any other sum, representing E&O charges due and payable pursuant to Section 8 of the MSA. This

amount represents the net amount due and owing after considering the funds in the Reserve Account.

40. Dialight's E&O liability bears interest at the rate of 1% per month commencing 20 business days after Dialight's breach and repudiation of its E&O obligations.

41. As a result of Dialight's failure to pay, Sanmina has suffered damages in the sum of $4,554,704.80, plus interest thereon, which continues to accrue at the rate of 1% per month.

42. Sanmina also is entitled to recover its attorneys' fees and costs of suit in accordance with the terms of the MSA.

WHEREFORE, Sanmina prays for judgment against Dialight as follows:

1. On Count One, for the principal sum of $5,325,711.80, plus interest thereon at the rate of 1% per month commencing 30 days after the issuance of each invoice comprising this sum.

2. On Count Two, for the principal sum of $4,554,704.80, plus interest thereon at the rate of 1% per month commencing 20 business days following the date of Dialight's breach and repudiation of its E&O obligations under the MSA.

3. On both causes of action, for Sanmina's costs incurred in collecting these debts, including, without limitation, all reasonable attorneys' fees incurred.

4. On both causes of action, for such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Sanmina hereby demands a trial by jury as to all claims alleged herein.

Dated: New York, New York
February 3, 2020

                ERVIN COHEN & JESSUP LLP
                      and
                RICH, INTELISANO & KATZ, LLP

By: /s/ Joseph A. Gershman
     Joseph A. Gershman
     (jgershman@riklawfirm.com)
     915 Broadway, Suite 900
     New York, New York 10010
     (212) 684-0300
     *Attorneys for Plaintiff Sanmina Corporation*

14558.30:9788511.6