UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANMINA CORPORATION,<br><br>                    Plaintiff,<br><br>          -v.-<br><br>DIALIGHT PLC,<br><br>                    Defendant. | 19 Civ. 11710 (KPF)<br><br>**SEALED OPINION AND ORDER** |
| DIALIGHT PLC,<br><br>                    Plaintiff,<br><br>          -v.-<br><br>SANMINA CORPORATION,<br><br>                    Defendant. | 19 Civ. 11712 (KPF) |

KATHERINE POLK FAILLA, District Judge:

Sanmina Corporation ("Sanmina") seeks reconsideration of the Court's Sealed Opinion and Order of March 14, 2023, resolving Sanmina's motion for partial summary judgment (the "MSJ Opinion" or "MSJ Op."). Specifically, Sanmina seeks reconsideration of this Court's denial of summary judgment with respect to Sanmina's breach of contract claim predicated on certain accounts receivable. For the reasons set forth in the remainder of this Opinion, the Court finds that limited reconsideration of its earlier decision is warranted, and thus grants the motion in part.

## BACKGROUND[1]

### A. Factual Background

The Court assumes familiarity with the factual and procedural histories of this litigation and incorporates by reference the facts set forth in its MSJ Opinion. (Dkt. #121 (MSJ Op.)). The Court summarizes below only the facts essential to the adjudication of the instant motion.

Dialight plc ("Dialight") is a designer and manufacturer of industrial light-emitting diode ("LED") light fixtures for use in a variety of high-risk environments, including factory floors, oil refineries, and telecommunications towers. (Dialight 56.1 ¶ 71). Dialight's products are made-to-order, as opposed to mass-produced. (*Id.* ¶ 73). Dialight adheres to a "high mix, low volume" approach, producing relatively small quantities of a large variety of products. (*Id.* ¶¶ 72-74).

Sanmina, on the other hand, is one of the world's largest contract manufacturers. (Sanmina 56.1 ¶ 1). Sanmina operates seventy-five manufacturing facilities in twenty-five countries. (*Id.*). Its Guadalajara, Mexico

---

[1] References to docket entries in this Opinion are to the docket in Case No. 19 Civ. 11710 unless otherwise specified. The facts set forth in this Opinion are drawn from the parties' submissions in connection with Sanmina's motion for partial summary judgment. The Court draws primarily from Sanmina's Local Civil Rule 56.1 Statement of Material Undisputed Facts (Dkt. #84 ("Sanmina 56.1")) and Dialight's Response to Sanmina's Local Civil Rule 56.1 Statement and Statement of Additional Material Facts pursuant to Local Civil Rule 56.1(b) (Dkt. #93 ("Dialight 56.1")).

For ease of reference, the Court refers to Sanmina's brief in support of its motion for partial summary judgment as "Sanmina MSJ Br." (Dkt. #83) and to Dialight's opposition brief as "Dialight MSJ Br." (Dkt. #92). The Court refers to Sanmina's brief in support of its motion for reconsideration as "Sanmina Recon. Br." (Dkt. #130), to Dialight's opposition brief as "Dialight Recon. Opp." (Dkt. #133), to Sanmina's reply as "Sanmina Recon. Reply" (Dkt. #135), and to Dialight's sur-reply as "Dialight Recon. Sur-reply" (Dkt. #138).

factories are dedicated to manufacturing lighting equipment, among other products.  (*Id.* ¶ 5).

The contract dispute at the heart of this litigation arose from Dialight's desire to outsource some of its manufacturing obligations to a third party.  (Dialight 56.1 ¶¶ 75-77).  In March 2016, Dialight and Sanmina entered into a "Manufacturing Services Agreement" (the "MSA"), which would govern Dialight's relationship with Sanmina as its chosen outsourcing partner.  (*Id.* ¶¶ 16, 46; *see also generally* Dkt. #30-1 ("MSA")).  Under the terms of the MSA, Dialight would send Sanmina periodic purchase orders; Sanmina would accept and fulfill such orders by manufacturing the subject products and delivering them to Dialight or its customers.  (*See* MSA §§ 1, 3, 12).  The MSA afforded Dialight fifteen business days after receipt of each shipment to reject non-compliant goods, after which point Dialight was deemed to have accepted the shipment.  (*Id.* § 3.6).  Dialight would then pay invoices received from Sanmina within thirty days of the date of shipment, but could withhold any payments disputed in good faith.  (*Id.* §§ 11.1-2).

By the fall of 2016, Dialight had begun transferring certain of its product lines to Sanmina for production.  (Dialight 56.1 ¶¶ 16, 46).  Thereafter, according to Dialight, Sanmina repeatedly failed to meet its obligations under the MSA, including by failing to fulfill orders in a timely fashion and by fulfilling orders with substandard products.  (*Id.* ¶¶ 164-265).  According to Sanmina, however, it was Dialight who breached the MSA by failing to pay approximately $5.3 million in invoices issued by Sanmina for goods accepted

by Dialight, among other things. (Sanmina MSJ Br. 23-24). Following a rocky, two-year outsourcing relationship, Dialight formally terminated the MSA on September 27, 2018. (Dialight 56.1 ¶¶ 266-267).

## B. Procedural Background

On December 20, 2019, the parties filed competing lawsuits against each other. (*See* Dkt. #1 (Sanmina Complaint); 19 Civ. 11712 Dkt. #2 (Dialight Complaint ("Dialight Compl."))).[2] On January 7, 2020, the Court accepted the two cases as related. (19 Civ. 11712, Minute Entry for January 7, 2020; *see also* Dkt. #7-8). On February 3, 2020, Sanmina amended its complaint. (Dkt. #18 ("Sanmina AC")). On May 15, 2020, the Court entered the parties' proposed case management plan (Dkt. #37) and the consolidated action proceeded to discovery. Following extensive discovery — complicated in part by efforts to collect evidence from other countries (*see, e.g.*, Dkt. #46-47, 57-58 (requesting the assistance of British, Canadian, and Mexican courts in the taking of foreign evidence)) — the parties participated in a private mediation at the end of 2021 (Dkt. #67).

In January 2022, after the mediation proved unsuccessful (Dkt. #69), Sanmina expressed its intention to file a motion for partial summary judgment (Dkt. #71). With the Court's consent, Sanmina filed its motion for partial summary judgment and accompanying papers on May 2, 2022. (Dkt. #81, 83-88). Dialight filed its opposition and accompanying papers on June 16 and 17,

---

[2] Most documents filed after the Court accepted Case No. 19 Civ. 11712 as related to Case No. 19 Civ. 11710 appear on the dockets of both cases. As noted, the Court refers to the docket of the earlier-filed action (No. 19 Civ. 11710) unless otherwise specified.

2022.  (Dkt. #92-99).  Sanmina then filed its reply and accompanying papers on July 18, 2022.  (Dkt. #102-111).

Sanmina's motion for summary judgment involved only a subset of the claims set forth in the parties' lawsuits.  (Sanmina MSJ Br. 1-2).  By way of background, Sanmina's 2019 Complaint brought two distinct claims against Dialight: (i) breach of contract for failure to pay approximately $5.3 million in outstanding invoices for delivered goods (the "Accounts Receivable Claim" or "A/R Claim" (Sanmina AC ¶¶ 27-34)); and (ii) breach of contract for failure to pay approximately $4.55 million for excess and obsolete materials ordered in accordance with Dialight's forecasts but never utilized (the "E&O Claim" (*id.* ¶¶ 35-42)).  Dialight's Complaint, in contrast, brought three claims against Sanmina: (i) fraudulent inducement to enter the MSA (Dialight Compl. ¶¶ 67-74); (ii) breach of contract for, *inter alia*, failing to ship complete, timely, and conforming orders (*id.* ¶¶ 75-100); and (iii) gross negligence/willful misconduct for failure to discharge its duty to refrain from negligently or intentionally harming Dialight's business operations (*id.* ¶¶ 101-107).  Sanmina moved for summary judgment as to only three of the five claims: Dialight's first and third claims for fraudulent inducement and willful misconduct, respectively, and Sanmina's Accounts Receivable Claim.  (Sanmina MSJ Br. 1-2).

On March 14, 2023, the Court issued the MSJ Opinion granting Sanmina's motion for summary judgment in its favor as to Dialight's third claim for willful misconduct and denying Sanmina's motion as to Dialight's first claim for fraudulent inducement and Sanmina's A/R Claim.  (MSJ Op. 31).

Soon after, on March 29, 2023, Sanmina filed the instant motion asking this Court to reconsider its denial of Sanmina's A/R Claim. (Sanmina Recon. Br. 2). On April 11, 2023, Dialight filed its opposition to Sanmina's motion for reconsideration. (Dkt. #133). Sanmina filed its reply on April 18, 2023 (Dkt. #135), and, with the permission of the Court, Dialight filed a sur-reply on May 9, 2023 (Dkt. #138-39).

On **November 28, 2023**, the Court filed and provided to the parties an unredacted copy of this Opinion under seal and allowed the parties to propose redactions in accordance with *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). On or before **December 29, 2023**, the parties shall file a joint letter suggesting redactions to this Opinion and to the MSJ Opinion. Taking the parties' suggestions into consideration, the Court will then file redacted versions of the Opinions on the public docket.

## DISCUSSION

**A.     Applicable Law**

Broadly speaking, Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 govern motions for reconsideration. *See Cadet* v. *All. Nursing Staffing of New York, Inc.*, No. 21 Civ. 3994 (KPF), 2023 WL 3872574, at *4 (S.D.N.Y. Jan. 6, 2023), *reconsideration denied*, 2023 WL 3872558 (S.D.N.Y. Apr. 12, 2023); *Silverberg* v. *DryShips Inc.*, No. 17 Civ. 4547 (SJF), 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018); *United States* v. *Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 59(e) (motion to

alter or amend judgment), 60(b) (motion for relief from judgment or order); Local Civ. R. 6.3 (motion for reconsideration). Reconsideration motions are subject to a "strict" standard, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and will be granted "only when the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Sec. & Exch. Comm'n* v. *Gottlieb*, No. 98 Civ. 2636 (LAP), 2021 WL 5450360, at *2 (S.D.N.Y. Nov. 22, 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

Importantly, a reconsideration motion is not a vehicle (i) to "introduce additional facts not in the record on the original motion"; (ii) to "advance[] new arguments or issues that could have been raised on the original motion"; or (iii) to "relitigate an issue already decided." *Silverberg*, 2018 WL 10669653, at *2 (collecting cases); *accord Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012). Instead, reconsideration may be warranted where the movant "can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257; *see also Lichtenberg* v. *Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (summary order). Ultimately, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." *Vincent* v. *Money Store*, No. 03 Civ. 2876 (JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011).

7

**B.    Analysis**

Sanmina's A/R Claim seeks $5.3 million plus interest from Dialight for "goods and materials that Dialight ordered from Sanmina, Sanmina shipped to Dialight, Dialight did not timely reject, and for which Dialight failed to pay." (Sanmina MSJ Br. 22-23; *see also* Sanmina AC ¶¶ 27-34).  In its motion for summary judgment, Sanmina asserted that it was owed this sum because it sent Dialight invoices contemporaneously with its shipments and Dialight did not reject the shipments within the acceptance period defined in the MSA. (Sanmina MSJ Br. 23; *see also* MSA § 3.6 ("Acceptance of Product shall occur no later than fifteen (15) business days after the shipment of Product and shall be based on whether the Products shipped meets the Product or Order Specifications[.]")).

Initially, Dialight opposed Sanmina's motion for summary judgment on the A/R Claim for two reasons: (i) "[r]oughly twenty percent of Sanmina's accounts receivable claim is in factual dispute because the evidence shows it is based on product that never shipped or shipped with material defects," and (ii) "Sanmina currently owes Dialight money."  (Dialight MSJ Br. 25 (citing MSA § 11.5 ("Each party may at any time set off an amount owed by the other Party to such Party against any amount payable to the other Party from such Party, arising out of this Agreement."))).  Of potential note, Dialight's brief made no

8

legal argument as to the enforceability or applicability *vel non* of Section 3.6 of the MSA to the products underlying Sanmina's A/R Claim. (*See id.*).[3]

The Court's MSJ Opinion resolved Sanmina's motion as to its A/R Claim as follows:

> Dialight disputes Sanmina's characterization of the facts, maintaining that "roughly twenty percent of Sanmina's accounts receivable claim is in factual dispute because the evidence shows it is based on product that Sanmina never shipped or shipped with material defects." To support its view of the facts, Dialight cites, among other things, the deposition testimony of former Dialight financial controller Ronan Sheehy. As relevant here, [] Sheehy testified that on multiple occasions Sanmina billed Dialight for goods it did not ship (or that were not delivered); Dialight rejected portions of the relevant goods following inspection; and Dialight sent Sanmina regular emails detailing its rejection of delivered goods. Dialight has thus met its burden of identifying evidence in the record sufficient to establish a genuine issue for trial on Sanmina's accounts receivable claim.

(MSJ Op. 31 (citations omitted) (alterations adopted)).

Sanmina now argues that reconsideration is warranted because, in denying Sanmina's motion for summary judgment on its A/R Claim, the Court overlooked certain undisputed evidence. (Sanmina Recon. Br. 2). Specifically, Sanmina claims that the Declaration of Jose Camacho, submitted by Sanmina, makes plain that "there is no record of any timely notice of rejection of any

---

[3] The Court does, however, acknowledge that Dialight's Response to Sanmina's Local Civil Rule 56.1 Statement indicates that Dialight "disputes that the 15 day acceptance window was in effect after the MSA was terminated," and claims that "[a] significant number of Sanmina's claimed invoices were issued after the effective termination date of the MSA." (Dialight 56.1 ¶ 63). Further argument is nonetheless lamentably absent from Dialight's opposition brief.

9

invoice comprising Sanmina's A/R Claim"; the deposition testimony of Ronan Sheehy, submitted by Dialight in response, fails to address whether Dialight provided a notice of rejection as to any of the invoices at issue in Sanmina's A/R Claim. (*Id.* at 2-6). Accordingly, Sanmina contends, "Dialight did not introduce evidence sufficient to carry its summary judgment burden in the face of the Camacho declaration." (*Id.* at 6).

Dialight, on the other hand, argues that in the course of the parties' briefing on Sanmina's summary judgment motion, it "presented evidence in the form of deposition testimony and documentary evidence establishing that there is a triable issue of fact on th[e] A/R claim." (Dialight Recon. Opp. 2). In this regard, Dialight points to:

- The deposition testimony of Ronan Sheehy, which sets forth that (i) "there were instances throughout the duration of the [MSA] where Sanmina invoiced Dialight for goods it did not ship" (*id.* (citing Dialight 56.1 ¶ 66 (citing Dkt. #98-71 ("Sheehy Tr.") at 349:19-23))) and (ii) "Dialight rejected a number of the goods at issue following inspection" (*id.* (citing Sheehy Tr. 351:3-12, 352:15-353:4)). (*See also id.* at 7-8 (citing Sheehy Tr. 66:7-20, 166:19-167:12, 199:2-12)).

- A Sanmina email chain, offered to show that Sanmina's invoicing of customers for products that were never shipped "was a major ongoing problem for Sanmina." (*Id.* at 2 (citing Dialight 56.1 ¶ 66 (citing Dkt. #96-34))).

- The deposition testimony of Dialight witness Dan Harris, in which he testified that: (i) "Dialight informed Sanmina contemporaneously in a written report that Dialight could not pay a number of Sanmina invoices because Dialight had no record of receiving the goods and required proof of delivery" (*id.* at 8 (citing Dkt. #98-

10

>   54 ("Harris Tr.") at 269:4-14));[4] and (ii) "the rejected invoices [at issue in Sanmina's A/R Claim] involved materials, not Products, [and as such] it was unnecessary to give the rejection notices within fifteen days [under the MSA]" (Dialight Recon. Sur-reply 3 (citing Harris Tr. 269:20-270:10)).
>
> - The deposition testimony of Dialight witness Angel Escamilla to the effect that: (i) "of the materials at issue that [Sanmina] actually shipped, many were shipped after the MSA was terminated, and Dialight specifically organized the goods into large tents to determine which were defective" (Dialight Recon. Opp. 2 (citing Dialight 56.1 ¶ 67 (citing Dkt. #98-55 ("Escamilla Tr.") at 201:24-202:22, 221:12-14))), and (ii) "discrepancy reports were sent [by Dialight] to Sanmina identifying [] defective product" (*id.* (citing Escamilla Tr. 204:8-17)).

After carefully reviewing the parties' reconsideration submissions and the record evidence on which they now rely, the Court concludes that the first two pieces of evidence cited by Dialight — the Sheehy testimony and the Sanmina email chain — fail to generate triable issues of fact. However, the second two pieces of evidence — the Harris testimony and the Escamilla testimony — demonstrate that triable factual disputes remain. The Court discusses each piece of evidence in turn.

Beginning with the Sheehy testimony, the Court acknowledges that Sheehy testified *both* that Sanmina billed Dialight for goods that were never delivered (*see, e.g.*, Sheehy Tr. 349:6-23), and that Sanmina billed Dialight for goods that Dialight rejected following inspection (*see, e.g., id.* at 351:3-12). Nowhere, however — as Sanmina rightly points out — does Sheehy testify that

---

[4] Sanmina correctly observes that this portion of Harris's testimony was not referenced in Dialight's summary judgment briefing. (*See* Sanmina Recon. Reply 6).

11

Dialight "timely rejected any of the specific shipments for which Sanmina seeks payment" in the A/R Claim. (Sanmina Recon. Br. 5).

What is more, Sheehy's testimony that the invoices included in Sanmina's A/R Claim "relate to quantities of materials that were not received" does not alone create a triable dispute of fact. (Sheehy Tr. 349:21-23). As Dialight acknowledges in its sur-reply, Sheehy testified as to Dialight's practice of "re-charging" Sanmina, including "for the return of defective products or for un-received products pursuant to Section 23 (Warranty) of the MSA." (Dialight Recon. Sur-reply 2). Accordingly, the fact that Dialight may not have received products within the scope of Sanmina's A/R Claim does not mean that Dialight timely rejected such products pursuant to Section 3.6 of the MSA; rather, absent evidence of timely rejection, the Court has no reason to believe that Dialight could not or did not seek recovery for such accepted-yet-not-received products via Section 23. (*See also* Sanmina MSJ Br. 23 ("Failure to reject limits Dialight to asserting warranty claims against Sanmina.")).

Similarly unavailing is Dialight's reliance on Sheehy's testimony that Dialight notified Sanmina that "it was rejecting or revoking acceptance of deliveries" via so-called "discrepancy reports," which were sent to Sanmina "several times a week ... as they were arising." (Sheehy Tr. 352:15-353:4). As Sanmina noted in its initial motion for summary judgment:

> In response to Sanmina's Contention Interrogatory no. 14, which asked Dialight to identify any instance in which it timely rejected a delivery that underlies Sanmina's A/R Claim ... Dialight identified documents showing that it had, in fact, timely rejected certain Sanmina deliveries. However, only one of the

12

> documents identified by Dialight pertains to an invoice underlying the A/R [C]laim, and to avoid a triable issue of fact, Sanmina has removed that invoice from its calculation.

(Sanmina MSJ Br. 24 (citations omitted)). If Dialight believed such "discrepancy reports" amounted to evidence of Dialight's timely rejections of any of the deliveries underlying Sanmina's A/R Claim, Dialight would (or should) have produced such reports in response to Sanmina's Contention Interrogatory No. 14. Dialight's failure to do so can only be interpreted as a tacit admission that such evidence does not exist. (*See also* Escamilla Tr. 204:18-24 ("Q: So just to be clear ... [a]ny materials that Dialight rejected should have a discrepancy report associated with it, correct? A: Yes.")).

    Moving on to the second piece of evidence, the Court observes that the Sanmina email chain indicates that Sanmina, at one point in time, was "invoicing [its] customer[s] and ... not shipping product." (Dkt. #96-34). As an initial matter, it is not clear to the Court that this email chain is pertinent to the A/R Claim. *First,* the emails relate to products shipped directly to Dialight's customers, while the invoices at issue in the A/R Claim relate to products shipped directly to Dialight. (Sanmina Recon. Reply 7). *Second,* the emails were exchanged almost a full year before Sanmina issued the first invoice falling under the A/R Claim. (*Id.* at 5, 7). Even assuming, *arguendo*, that the email chain is pertinent, it says nothing about Dialight's timely rejection of any products within the scope of Sanmina's A/R Claim. Thus, the email chain also fails to generate a triable dispute of fact.

The other two pieces of evidence, however, reassure the Court that triable issues of fact remain. According to Dialight, the testimony of Dan Harris confirms that "Dialight informed Sanmina contemporaneously in a written report that Dialight could not pay a number of Sanmina invoices because Dialight had no record of receiving the goods and required proof of delivery." (Dialight Recon. Opp. 8 (citing Harris Tr. 269:4-14)). As with the Sheehy testimony, from this portion of Harris's testimony alone, the Court cannot infer a triable issue of fact; among other things, the testimony does not support the fact that Dialight informed Sanmina contemporaneously in a written report that it was *rejecting* the goods underlying the Sanmina invoices.

But another part of Harris's testimony alters the Court's calculus. In its sur-reply brief, Dialight highlights Harris's claim that the invoices underlying the A/R Claim are "largely unpaid invoices for materials, not finished goods." (Harris Tr. 270:5-10; *see* Dialight Recon. Sur-reply 3). As Dialight goes on to explain, "Section 3.6 of the MSA only requires rejection within 15 days for Products, not Materials . . . Harris testified that the rejected invoices involved materials, not Products, [so] it was unnecessary to give the rejection notices within fifteen days[.]" (*Id.*). Accordingly, there remains a genuine dispute of material fact between the parties — not as to whether Dialight timely issued rejection notices corresponding to the invoices underlying Sanmina's A/R Claim, but rather as to whether such invoices pertain to "Products" or "Materials" under the MSA.

Finally, the Court evaluates the testimony of Dialight witness Angel Escamilla. Again, nowhere in his testimony does Escamilla affirm that Dialight sent notices of rejection to Sanmina within 15 days of the shipment of any of the goods underlying Sanmina's A/R Claim. Indeed, if anything, Escamilla's testimony provides evidence to the contrary. Escamilla testifies about an email he received from another Dialight employee, who — in the course of a May 2019 exchange regarding Dialight's "process to inspect, document, and dispose on a reasonable time any supplier rejects" — asks Escamilla whether "[Dialight] ha[s] other suppliers with rejects sitting there [not yet inspected, documented, and disposed of] [for] more than 30 days *besides Sanmina.*" (Escamilla Tr. 221:2-7 (emphasis added)). This exchange suggests that, at that time, Dialight was failing to send rejection notices to Sanmina within a 30-day time frame.

Nonetheless, Escamilla also testifies — as Dialight points out in its sur-reply — that the goods underlying Sanmina's A/R Claim are "raw materials," not "fixtures." (Escamilla Tr. 200:22-24; *see* Dialight Recon. Sur-reply 3). As noted with respect to Harris, if Escamilla's testimony were accurate, then Section 3.6 would be inapplicable to such goods. Additionally, Escamilla testifies that the goods at issue may have been "received from Sanmina after the [MSA] was terminated," and as such were no longer governed by Section 3.6. (Escamilla Tr. 200:18-21; *see* Dialight Recon. Sur-reply 3). For this reason, there is also a dispute of fact as to whether the goods underlying Sanmina's A/R Claim were received after the MSA's termination.

15

The foregoing analysis leaves the Court in a curious position. The Court agrees with Sanmina's characterization of the evidence to the extent that it fails to establish that Dialight timely issued a notice of rejection as to any of the invoices underlying Sanmina's A/R Claim. But the Court agrees with Dialight's characterization of the evidence to the extent that it suggests that triable issues of fact remain as to (i) whether the goods underlying the A/R Claim invoices were for "Products" or "Materials" under the MSA and (ii) whether they were received after the MSA was terminated. Consequently, the Court will grant Sanmina's motion for reconsideration, but only to the extent that the Court's MSJ Opinion suggested that the testimony of Ronan Sheehy established as a matter of fact that "Dialight timely rejected any of the [specific] shipments underlying Sanmina's A/R Claim." (Sanmina Recon. Reply 3). To the extent the Court's Opinion did so, the Court finds that the "need to correct a clear error" exists. *Kolel Beth*, 729 F.3d at 104. In all other respects, however, the Court denies Sanmina's motion.

The Court acknowledges that Dialight now makes arguments and cites evidence not relied upon in its submissions on Sanmina's partial motion for summary judgment. But, while the movant may not raise new arguments on a motion for reconsideration, *see Alvarado* v. *City of New York*, 482 F. Supp. 2d 341, 344 n.2 (S.D.N.Y. 2007), such rule does not extend to the non-moving party's opposition. Dialight's arguments in opposition to the instant motion — which respond to more nuanced arguments by Sanmina than were made in its

16

summary judgment motion — disclose triable disputes of fact as to Sanmina's A/R Claim. The Court will permit Dialight to make those arguments to a jury.

More fundamentally, while the Court finds that Sanmina has the better argument on a number of the parties' evidentiary disagreements, Sanmina fails to persuade the Court that it ought to have granted summary judgment in Sanmina's favor. The Court cannot ignore its obligation, in the context of summary judgment, to "construe the facts in the light most favorable to the non-moving party" (Dialight) and to "resolve all ambiguities and draw all reasonable inferences against the movant" (Sanmina). *Brod* v. *Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotations omitted). In view of this standard, while Sanmina has convinced the Court of the need to clarify its earlier opinion, the Court cannot go so far as to countermand it. Accordingly, the Court declines to grant Sanmina summary judgment on its A/R Claim.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part Sanmina's motion for reconsideration. The Court hereby VACATES that portion of its MSJ Opinion that found as a matter of fact that Dialight had timely rejected any of the goods underlying Sanmina's A/R Claim. In all other respects, the Court hereby DENIES Sanmina's motion. The parties are hereby ORDERED to submit a joint letter proposing redactions to this Opinion and to the MSJ Opinion and next steps in this action on or before **December 29, 2023**.

The Clerk of Court is directed to terminate the pending motion at docket entry 128 in Case No. 19 Civ. 11710. The Clerk of Court is further directed to

file this Opinion under seal in both cases, viewable only to the parties and the Court.

SO ORDERED.

Dated: November 28, 2023
New York, New York

KATHERINE POLK FAILLA
United States District Judge